Youssef H. Hammoud (SBN: 321934)
**HAMMOUD LAW, P.C.**
3744 E. Chapman Ave., #F12269
Orange, CA 92859
T: (949) 301-9692
F: (949) 301-9693
E: yh@lawhammoud.com

Susan M. Rotkis (AZ: 032866)
(*pro hac vice forthcoming*)
**CONSUMER ATTORNEYS**
2290 East Speedway Blvd.
Tucson, AZ 85716
T: (602) 807-1504
F: (718) 715-1750
E: srotkis@consumerattorneys.com

*Attorneys for Plaintiffs,*
*Hala Ahmed and Maali Salim,*
*on behalf of themselves and all similarly situated individuals*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HALA AHMED and MAALI SALIM,<br><br>on behalf of themselves and<br>all others similarly situated,<br><br>             Plaintiffs,<br><br>v.<br><br>TRANS UNION LLC, TRANSUNION<br>RENTAL SCREENING SOLUTIONS,<br>INC. and RENTSPREE, INC.,<br><br>             Defendants. | Case No.: 8:24-cv-00057<br><br><br>**CLASS ACTION COMPLAINT**<br>**AND DEMAND FOR JURY TRIAL** |

- 1 -

COMES NOW the Plaintiffs Hala Ahmed and Maali Salim (collectively referenced as "Plaintiffs"), on behalf of themselves and others similarly situated, and allege the following facts in support of this Class Action Complaint against Trans Union, LLC ("Trans Union"), TransUnion Rental Screening Solutions, Inc. ("TURSS"), and RentSpree, Inc. ("RentSpree") (collectively referenced as "Defendants").

## I.    PRELIMINARY STATEMENT

1.    This is a consumer class action complaint brought against Defendants Trans Union, TURSS, and Rentspree for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681 *et seq.*

2.    Defendants Trans Union and TURSS, each a credit reporting agency, and RentSpree, a reseller, reported inaccurate consumer information on Plaintiffs' and other consumers' consumer reports. "Consumer reports" under 15 U.S.C. 1681a(d) include both disclosures obtained directly by the consumer from a consumer reporting agency and consumer reports obtained by third parties as a factor in establishing a consumer's eligibility for housing.

3.    This action is brough for damages, injunctive relief and other available legal and equitable remedies together with costs and attorney's fees pursuant to the FCRA, 15 U.S.C. §§ 1681n(a) and 1681o(a).

//

- 2 -

## II.    JURISDICTION AND VENUE

4.    This Court has federal questions jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs allege violations of the Fair Credit Reporting Act, a federal law. See 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

5.    Venue in the Central District of California is proper pursuant to 28 U.S.C. § 1391(b)(2) because Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## III.    PARTIES

6.    Plaintiffs are natural persons who reside in California.

7.    Plaintiffs and each putative class members are "consumer[s]" as defined by the FCRA, 15 U.S.C. § 1681a(c).

8.    Defendant RentSpree is a "reseller," as defined in 15 U.S.C. § 1681a(f)). On information and belief, RentSpree is regularly engaged in the business of assembling and merging information contained in the database of another consumer reporting agency concerning any consumer for the purpose of furnishing such information to third parties through "consumer reports," as defined in 15 U.S.C. § 1681a(d). RentSpree does not maintain a database of the assembled or merged

information from which new consumer reports are produced, as defined by 15 U.S.C. § 1681a(u)(1), (2).   RentSpree's principal place of business is located at 17815 Ventura Blvd., Suite 202, Encino, CA 91316.

9.    Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Trans Union is a foreign corporation with a principal place of business in San Luis Obispo, California.  Trans Union's headquarters are located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through its registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

10.    Defendant TURSS is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). On information and belief, TURSS is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. TURSS' principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. TURSS can be served through its registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

- 4 -

11.   TURSS describes itself:

TransUnion Rental Screening Solutions, Inc. ("TransUnion," a member of the Trans Union LLC family of companies) reports public record items from local, state and federal courts and other public record sources. Generally, TransUnion retains third-party vendors to collect this public record information and transmit it to TransUnion for inclusion on consumer reports.

12.   During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of California and conducted business in the State of California on a routine and systematic basis.

13.   Defendants regularly engage in the business of collecting, assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendants regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

14.   During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

15.   Any violations by Defendants were not in good faith, were knowing, negligent, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

16.     The consumer information about the Plaintiffs published by Defendants was collected for the purpose of selling the consumer information in consumer reports.

## IV.    FACTUAL BACKGROUND

17.     Plaintiffs incorporate herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

18.     RentSpree partners with more than one hundred and sixty (160) Multiple Listing Services, Realtor® Associations, brokerages, and real estate platforms across the country and serves over half a million agents, owners, and renters across the country.

19.     Given its multiple partnerships and growing popularity, many landlords and agents around the country and in California use RentSpree to obtain consumer applications and consumer reports.

20.     RentSpree provides real estate agents, landlords and property managers with rental applications, full credit reports and scores, criminal background checks and nationwide evictions reports.

21.     TURSS is a wholly owned subsidiary of Trans Union.

22.     RentSpree partners with TURSS through its Trans Union SmartMove service, to obtain potential tenants' consumer reports, including credit reports,

- 6 -

background checks and/or eviction reports, and transmits these consumer reports to landlords, agents, and/or property managers.

23.     When a consumer submits a rental application through RentSpree, RentSpree requests and obtains a consumer report from TURSS, who in turn requests and obtains a consumer credit report from Trans Union.

24.     Information reported in the consumer report by RentSpree is acquired from TURSS.

25.     The information reported in the consumer report by TURSS is acquired from Trans Union.

26.     TURSS is unaware of where Trans Union obtains the information it reports on consumers.

27.     TURSS is unaware where Trans Union obtains information about consumers, including but not limited to, information about a consumer's social security number (such as whether or not the social security number is valid).

28.     TURSS does not review and/or otherwise employ any procedures to verify and ensure the information it receives from Trans Union about consumers is accurate.

29.     RentSpree does not review and/or otherwise employ any procedures to verify and ensure the information it receives from TURSS about consumers is accurate.

30.     RentSpree, TURSS, and TU have all been sued multiple times, including in class actions, and have been the subjects of many complaints to regulatory agencies for reporting false, misleading, and deleterious information about consumers to third parties.

31.     RentSpree, TURSS, and TransUnion are all on notice that their procedures harm consumers.

32.     When RentSpree prepared a consumer report about the Plaintiffs', RentSpree did not follow any reasonable procedures to assure maximum possible accuracy of the information contained within the report.

33.     When TURSS prepared a consumer report about the Plaintiffs', TURSS did not follow any reasonable procedures to assure maximum possible accuracy of the information contained within the report.

34.     When Trans Union prepared a consumer report about the Plaintiffs', Trans Union did not follow any reasonable procedures to assure maximum possible accuracy of the information contained within the report.

35.     In or around January 2022, Plaintiffs submitted rental applications to more than one landlord/agent.

36.     On or about January 12, 2022, Plaintiffs submitted a rental application through RentSpree.

37.     In turn, RentSpree prepared a consumer report about the Plaintiffs by assembling and/or merging the information it obtained from Defendant TURSS and sold the consumer packaged information to a third-party (i.e., the landlords/agents).

38.     Upon information and belief, RentSpree obtained consumer information about the Plaintiffs from a third party, TURSS.

39.     Upon information and belief, TURSS obtained consumer information about the Plaintiffs from its parent company, TransUnion.

40.     The consumer report prepared and published by Defendant RentSpree reflected a Fraud Indicator on the Plaintiffs' respective consumer reports that stated, "SSN may be invalid – it was either very recently or never issued by the Social Security Administration."

41.     A Fraud Indicator is a type of consumer score that indicates to the user of the consumer report that the Plaintiffs are fraudsters who are unworthy of being extended a lease.

42.     The information reported by Defendant RentSpree was inaccurate as Plaintiffs both had a valid social security number that was issued over 10 years ago.

43.     RentSpree did not follow any reasonable procedures to ensure maximum possible accuracy of the information contained within the Plaintiffs consumer reports.

44.    RentSpree did not follow any reasonable procedures to verify the validity of Plaintiffs' social security numbers.

45.    Further, when Plaintiffs submitted the rental application through RentSpree, RentSpree requested and acquired a consumer report from TURSS about the Plaintiffs.

46.    As such, Defendant TURSS prepared a consumer report about the Plaintiffs on or about January 12, 2022.

47.    The consumer report prepared and published by Defendant TURSS reflected a Fraud Indicator on the Plaintiffs' respective consumer reports that stated, "SSN may be invalid – it was either very recently or never issued by the Social Security Administration."

48.    The consumer information reported by Defendant TURSS was inaccurate because Plaintiffs both had a valid social security number that was issued over 10 years ago.

49.    TURSS did not follow any reasonable procedures to ensure maximum possible accuracy of the information contained within the Plaintiffs consumer reports.

50.    Moreover, in turn, to prepare and publish information about the Plaintiffs, TURSS requested consumer information about the Plaintiffs from Defendant Trans Union.

- 10 -

51.     As such, Defendant Trans Union prepared a consumer report about the Plaintiffs on or about January 12, 2022.

52.     Upon information and belief, the consumer report prepared and published by Defendant Trans Union reflected a Fraud Indicator on the Plaintiffs' respective consumer credit reports that stated, "SSN may be invalid – it was either very recently or never issued by the Social Security Administration."

53.     The information reported by Defendant Trans Union was inaccurate as Plaintiffs both had a valid social security number that was issued over 10 years ago.

54.     The inaccurate reporting by the Defendants about the Plaintiffs was considered by at least one landlord who ultimately denied the Plaintiffs' application and leased the property to another group of renters who did not have a fraud indicator associated with their consumer reports.

55.     A social security number issued more than 10 years ago is not "recent."

56.     Plaintiffs and their family sought asylum in the United States in or around June 2010.

57.     In or around December 2011, Plaintiffs and their family were granted work authorization cards and properly issued social security numbers from the Social Security Administration.

58.     Since then, Plaintiffs and other family members have been legally employed by various employers, without any issues with their SSNs.

59.    By the end of 2016, Plaintiffs and their family obtained Permanent Citizenship.

60.    After years of waiting for citizenship, going to courts, and working hard to afford an attorney so that they could ensure they did everything correctly, Plaintiffs could not believe that their consumer reports had fraud indicators.

61.    After discovering Defendants' inaccurate reporting, in or around January 2022, Plaintiff Hala Ahmed contacted RentSpree to dispute the fraud indicator.

62.    RentSpree informed Hala that she would need to contact TURSS to dispute any information on her credit report.

63.    On or about January 17, 2022, Hala called TURSS and spoke with a representative, Maria Jose Alvarez ("Ms. Alvarez").

64.    During the call, Hala disputed the fraud indicator associated with her social security number.

65.    In response to her dispute, Ms. Alvarez transferred her to another representative, Ms. Nancy Alvarez Vargas ("Ms. Vargas") of TURSS to address the issue.

66.    During the call with Ms. Vargas, Hala disputed the fraud indicator and indicated that it was inaccurate.

67.    In response to the dispute. Ms. Vargas stated that the fraud indicator was a "general warning," and it could not be modified.

68.    Hala requested to speak with a supervisor and was then transferred to Mr. Edy Zepeda ("Mr. Zepeda").

69.    During the call with Mr. Zepeda, Hala once again disputed the fraud indicator as inaccurate because she had a valid social security number, and it was not very recently issued.

70.    Hala informed Mr. Zepeda that the fraud indicator was misleading and inaccurate and was a cause for her rental applications being denied.

71.    Mr. Zepeda informed Hala that it was not possible to dispute the fraud indicator.

72.    Further, Mr. Zepeda informed Hala that TURSS received its information from Trans Union and that Hala should contact Trans Union to dispute the information at issue.

73.    On or about January 18, 2022, Hala called TURSS again to dispute the inaccurate fraud indicator.

74.    During the call, Hala spoke with a TURSS representative, Ms. Monica De Leon Perez ("Ms. Perez").

75.    Hala informed Ms. Perez that she was disputing the fraud indicator and in response, Ms. Perez informed Hala that it was a "warning."

76.    TURSS failed to investigate Plaintiff Hala's disputes regarding the fraud indicator.

77.    Sometime after January 17, 2022, Hala called Trans Union to dispute the fraud indicator associated with her social security number.

78.    During the call, the Trans Union representative indicated that it was not reporting her social security number with a fraud indicator and the statement that her social security "may be invalid – either it was never issued or very recently issued by the social security administration."

79.    Upon information and belief, Trans Union's report containing the statement that a social security number issued after 2011 automatically triggers a fraud indicator based on Trans Union's policies and procedures.

80.    The Trans Union representative informed Hala that it was only reporting her social security number as being issued after 2011.

81.    Upon information and belief, Trans Union prepared a consumer report about the Plaintiffs with inaccurate information regarding their social security numbers that triggered a fraud indicator falsely based on recency or that they were not issued by the Social Security Administration.

82.    Defendants' inaccurate reporting of the fraud indicator, along with additional information belonging to Plaintiffs, was published to third parties by Defendants in or around January 2022.

83.    In addition to falsely and outrageously being labeled as fraudsters to prospective landlords , Plaintiffs suffered deprivation of housing, interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational harm, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

84.    While Plaintiffs suffered significant individual injuries, they have elected to forego individual recoveries in favor of vindicating the rights of the putative class of consumers who were similarly injured when they were falsely labeled as fraudsters due the date their social security number was issued.

85.    Upon information and belief, Defendants report all social security numbers issued after 2011 with a fraud indicator.

86.    Upon information and belief, Defendants do not attempt to verify or otherwise ensure that the social security numbers issued after 2011 that are associated with consumers are valid.

87.    Upon information and belief, Defendants place a blanket fraud indicator on all social security numbers issued after 2011.

88.    Upon information and belief, Defendants intentionally refuse to investigate any disputes related to fraud indicators associated with consumer social security numbers issued after 2011.

89.    Defendants' failure to investigate disputes regarding consumer social security numbers issued after 2011 is unreasonable in light of their grave responsibility to ensure accuracy of consumer information.

90.    Defendants intentionally choose to label consumers with social security numbers issued after 2011 as fraudulent or fake based on invalid and discriminatory reasons, subjecting such consumers to injuries including communication of false fraud indicators that result in additional injuries such as deprivation of housing.

91.    Consumers with social security numbers issued after 2011 who are applying for housing are likely to be immigrants to the United States.

92.    The putative class members suffered the same or similar injuries that Plaintiffs suffered, including but not limited to communication of false fraud indicators, which is an injury against which the FCRA was designed to protect.

93.    Defendants inaccurately reported a fraud indicator on the consumer reports of each class member, and therefore failed to follow reasonable procedures to ensure the maximum accuracy of the information they published about consumers as required by the FCRA.

94.    This action is alleged as a class action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of the following classes initially defined as follows:

A. The "Inaccurate Report" Class:

(1) All consumers (2) whose social security number was issued in the United States after 2011; and (3) whose consumer reports were published by RentSpree, TURSS or Trans Union (4) within two years prior to the date on which this Class Action Complaint was filed through the date of class certification; (5) and the consumer report included a fraud indicator that included the following or similar language "SSN may be invalid – it was either very recently or never issued by the Social Security Administration."

B.    The "Failure to Investigate" Class:

(1) All consumers (2) whose social security number was issued in the United States after 2011; and (3) whose consumer reports were published by RentSpree, TURSS or Trans Union (4) within two years prior to the date on which this Class Action Complaint was filed through the date of class certification; (5) and the consumer report included a fraud indicator that included the following or similar language "SSN may be invalid – it was either very recently or never issued by the Social Security Administration"; (6) who disputed such information to RentSpree, TURSS, or Trans Union.

95.    **Numerosity**: Upon information and belief, Plaintiffs allege the class of persons to be represented is so numerous that joinder of all members is impractical. Upon information and belief, Defendants include such a fraud indicator in the consumer report of anyone who obtained their SSN after 2011, which includes numerous individuals.

96.    **Typicality**: The fraud indicator included in Plaintiffs' consumer reports is clearly automatically generated. Therefore, Plaintiffs' claims are not only typical of the Class, but are likely identical to the claims of each Class member for Defendants' inaccurate reporting of their information.

97.    **Commonality**: There are questions of law and fact common to the Class, and Plaintiffs' claims are typical of the claims of all the potential Class members. All are based on the same legal and remedial theories. All are based on Class questions of whether Defendants published inaccurate information regarding the class and whether Defendants followed reasonable procedures to ensure maximum accuracy of the information Defendants published.

98.    **Adequacy**: Plaintiffs will fairly and adequately protect the interest of the Class. Plaintiffs have retained counsel who is experienced in handling class actions and litigation under the Fair Credit Reporting Act. Plaintiffs are committed to the Class and have no conflict with it.

99.  **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of the controversy as to the Class. There are no individual issues that would burden or impede litigation in the aggregate. Class resolution will provide a uniform decision on the legality of Defendants automatic reporting of a fraud indicator for anyone who has received a SSN after 2011. Further, absent class representation, it is certain that most Class members will be unaware of their rights or be able to obtain adequate legal representation to prosecute those rights.

100.  **Predominance**: Defendants have acted or refused to act on grounds that apply generally to the Class such that uniform relief is appropriate. The Class claim and the relief sought in this class action predominate over any potentially individual claim a Class member may have.

101.  Defendants can identify and ascertain the names and contact information of the class members through the data that is maintained by Defendants on their systems of record.

102.  Defendants violated 15 U.S.C. § 1681e(b) as to the Plaintiffs and to the Class by failing to establish or to follow reasonable procedures to ensure maximum accuracy of the information they published about Plaintiffs and other Class members.

103.    Defendants' violation of 15 U.S.C. § 1681e(b) was willful, rendering the Defendant liable pursuant to 15 U.S.C. § 1681n.

104.    The Plaintiffs and each Class member suffered an actual injury and resulting damages because of Defendants' violation of § 1681e(b) as alleged herein.

105.    The Plaintiffs and each Class member suffered an actual injury when their consumer information was published containing a fraud indicator or other notation that their social security numbers were recently issued or were never issued by the Social Security Administration.

106.    Plaintiffs and each Class member are entitled to recover statutory damages up to $1,000, punitive damages, costs, and attorney's fees from the Defendants in an amount to be determined by the Court pursuant to § 1681n.

107.    In the alternative, Plaintiffs and each class member are entitled to recover actual damages, costs, and attorneys' fees pursuant to § 1681o.

108.    Plaintiffs and each Class member that disputed the presence of a fraud indicator, or the recency or issuance of their social security numbers, were entitled to Defendants conduct of a reasonable investigation of the disputed information pursuant to 15 U.S.C. § 1681i.

109.    Defendants each refused to conduct any investigation in response to the Plaintiffs' disputes in violation of the FCRA.

110.   The Plaintiffs and each Class member suffered an actual injury in being deprived of the reasonable investigation, leaving them without any remedy to the false and injurious information remaining in their consumer files.

111.   Plaintiffs and each Class member are entitled to recover statutory damages up to $1,000, punitive damages, costs, and attorney's fees from the Defendants in an amount to be determined by the Court pursuant to § 1681n.

112.   In the alternative, Plaintiffs and each class member are entitled to recover actual damages, costs, and attorneys' fees pursuant to § 1681o.

## V.    COUNT I
### Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)
### Class Claim against all Defendants

113.   Plaintiffs incorporate herein by reference all of the above paragraphs of this Complaint that form the basis of the allegation of violations in Count I.

114.   The FCRA requires CRAs, like Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

115.   Defendants negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of the information they reported about Plaintiffs and the class.

116.  Defendants could easily check to see if the Plaintiffs' social security numbers were issued by the SSA, but they intentionally choose not to do so because it would cost time and money.

117.   Defendants received information indicating that Plaintiffs' SSNs and the SSNs of each Class member were properly issued by the Social Security Administration through the same sources Defendants obtain SSN information.

118.  Therefore, Defendants knew or should have known that Plaintiffs' SSNs and the SSNs for other Class members were not fraudulent.

119.  Defendants also knew that reporting a fraud indicator in a consumer's report decreases the consumer's chance of having their rental applications accepted.

120.  Despite that knowledge, Defendants inaccurately reported a fraud indicator on Plaintiffs' and other Class members' consumer reports.

121.  Defendants knew or should have known of their obligations under the FCRA.

122.  These obligations are well established plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and exemplified in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures concerning their reporting.

123.  Additionally, Defendants possess or could easily obtain substantial written materials that detail their duties and obligations under the FCRA.

124.   Despite knowledge of these legal obligations, Defendants willfully and knowingly breached their duties in violation of 15 U.S.C. § 1681e(b). Accordingly, Defendants deprived Plaintiffs and the other Class members of their rights as consumers under the FCRA.

125.   Defendants also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendants knew or should have known the information, they were reporting is inaccurate and misleading, and/or otherwise contradicted by information known by Defendants, reported to Defendants, and reasonably available to Defendants.

126.   Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

127.   Alternatively, Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

128.   Plaintiffs and each Class member suffered an actual injury  because of Defendants' violation of § 1681e(b) as alleged herein.

129.   Defendants are direct and proximate causes of Plaintiffs' and other Class members' damages.

130.   Defendants are substantial factors in Plaintiffs' and other Class members' damages.

131.   Therefore, each Defendant is individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI.    COUNT II
### Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681i(a)
### Class Claim against All Defendants

132.   Plaintiffs incorporate herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

133.   If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly, through a reseller, of such dispute, the agency shall, free of charge conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file. *15 U.S.C. § 1681i(a)(1)(A)*.

134.   Further, before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person.

The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller. *15 U.S.C. § 1681i(a)(2)(A)*.

135.    Defendants willfully violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation of the information disputed by Plaintiff Hala and the class.

136.    Defendants RentSpree and TURSS negligently and willfully violated 15 U.S.C. § 1681i by failing to notify the person who provided the item of information in dispute that Plaintiff Hala and the class were disputing said information.

137.    Defendants easily could have verified that the social security numbers were valid .

138.     Defendants received information indicating that Plaintiffs' SSNs and the SSNs of each Class member were properly issued by the Social Security Administration through the same sources Defendants obtain SSN information, and through the disputes by the consumers.

139.    Therefore, Defendants knew or should have known that Plaintiffs' SSNs and the SSNs for other Class members were not fraudulent.

140.    Defendants also knew that reporting a fraud indicator in a consumer's report decreases the consumer's chance of having their rental applications accepted.

141.   Despite that knowledge, Defendants inaccurately reported a fraud indicator on Plaintiffs' and other Class members' consumer reports.

142.   Defendants knew or should have known of their obligations under the FCRA.

143.   These obligations are well established plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and exemplified in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures concerning their reporting and of their unreasonable procedures concerning the reinvestigation of disputed items of information.

144.   Additionally, Defendants possess or could easily obtain substantial written materials that detail their duties and obligations under the FCRA.

145.   Despite knowledge of these legal obligations, Defendants willfully and knowingly breached their duties in violation of 15 U.S.C. § 1681i. Accordingly, Defendants deprived Plaintiffs and the other Class members of their rights as consumers under the FCRA.

146.   Defendants also violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation of the disputed items of information when Defendants knew or should have known the information they were reporting is inaccurate and

misleading, and/or otherwise contradicted by information known by Defendants, reported to Defendants, and reasonably available to Defendants.

147.   Defendants' violations of 15 U.S.C. § 1681i were willful.

148.   Alternatively, Defendants' violations of 15 U.S.C. § 1681i were negligent.

149.   Plaintiffs and each Class member suffered an actual injury and loss because of Defendants' violation of § 1681i as alleged herein.

150.   Defendants are direct and proximate causes of Plaintiffs' and other Class members' damages.

151.   Defendants are substantial factors in Plaintiffs' and other Class members' damages.

152.   Therefore, each Defendant is individually liable for statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681n.

153.   In the alternative, each Defendant is liable for negligent violations of the FCRA, entitling the Plaintiff and the Class to actual damages, attorneys' fees, and costs, as well as other such relief provided by 15 U.S.C. § 1681o.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully move for Class certification and request that this Honorable Court enter judgments against Defendants for the following:

(a)    Certification of the Classes;

(b)    Declaratory judgment that Defendants violated the FCRA;

(c)    Judgment for statutory damages and punitive damages for Defendants' willful violations of the FCRA;

(d)    Judgment for reasonable attorneys' fees and costs, pre-judgment and post-judgment interest at the legal rate pursuant to the FCRA;

(e)    In the alternative, judgment for actual damages for Defendants' negligent violations of the FCRA;

(f)    In the alternative, issue certification;

(g)    Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VIII.  JURY DEMAND

Plaintiffs, on behalf of themselves and others similarly situated, hereby demand jury trial on all issues so triable.

//

RESPECTFULLY SUBMITTED,

DATED:  January 10, 2024

By: */s/ Youssef H. Hammoud*
Youssef H. Hammoud (SBN: 321934)
**HAMMOUD LAW, P.C.**
3744 E. Chapman Ave., #F12269
Orange, CA 92859
T: (949) 301-9692
F: (949) 301-9693
E: yh@lawhammoud.com

Susan M. Rotkis (AZ: 032866; VA: 40693)
(*pro hac vice forthcoming*)
**CONSUMER ATTORNEYS**
2290 East Speedway Blvd.,
Tucson, AZ 85716T: (602) 807-1504
F: (718) 715-1750
E: srotkis@consumerattorneys.com

*Attorneys for Plaintiffs,*
*Hala Ahmed and Maali Salim,*
*on behalf of themselves and all*
*similarly situated individuals*