1  NATALIE N. PELED (SBN 325166)
   natalie.peled@bipc.com
2  BUCHANAN INGERSOLL & ROONEY LLP
   One America Plaza
3  600 West Broadway, Suite 1100
   San Diego, CA  92101
4  Telephone:  619 239 8700
   Fax:            619 702 3898
5
   PATRICK D. DORAN (admitted *pro hac vice*)
6  patrick.doran@bipc.com
   SAMANTHA L. SOUTHALL (admitted *pro hac vice*)
7  samantha.southall@bipc.com
   BUCHANAN INGERSOLL & ROONEY PC
8  Two Liberty Place
   50 S. 16th St., Suite 3200
9  Philadelphia, PA  19102-2555
   Telephone:  215 665 8700
10 Fax:            215 665 8760

11 *[Additional Counsel Listed on Following Page]*

12

13                UNITED STATES DISTRICT COURT

14                CENTRAL DISTRICT OF CALIFORNIA

15                        SOUTHERN DIVISION

| | |
|---|---|
| HALA AHMED and MAALI SALIM, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Trans Union LLC, TransUnion Rental Screening Solutions, Inc. and RentSpree, Inc.,<br><br>Defendants. | Case No.:  8:24-cv-00057-DOC-DFM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS TRANS UNION, LLC'S, TRANSUNION RENTAL SCREENING SOLUTIONS, INC.'S AND RENTSPREE, INC.'S JOINT MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:       December 30, 2024<br>Time:      8:30 A.M.<br>Ctrm:      10A<br><br>Removal Date:<br>Action Filed:    January 10, 2024 |

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS TRANS UNION, LLC'S, TRANSUNION RENTAL SCREENING SOLUTIONS, INC.'S AND RENTSPREE'S JOINT MOTION FOR JUDGMENT ON THE PLEADINGS

CHRISTIAN C. KOHLSAAT (admitted *pro hac vice*)
christian.kohlsaat@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
Two South Biscayne Boulevard, Suite 1500
Miami, FL 33131-1822
Telephone: 305 347 5720

*Attorneys for Trans Union, LLC and TransUnion Rental Screening Solutions, Inc.*

Camille R. Nicodemus, Esq.
Admitted (Pro Hac Vice)
Quilling, Selander, Lownds,
Winslett & Moser, P.C.
10333 N. Meridian St., Suite 200
Indianapolis, IN 46290
Telephone: 317 497-5600, Ext. 601
Fax:         317 899-9348
E-Mail:      cnicodemus@qslwm.com

Ritika Singh, Esq.
Quilling, Selander, Lownds,
Winslett & Moser, P.C.
6900 North Dallas Parkway, Suite 800
Plano, TX 75024
Phone:       214 560-5442
Fax:         214 871-2111
Email:       rsingh@qslwm.com

*Attorneys for RentSpree, Inc.*

# **TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ................................................................................1

II. FACTUAL BACKGROUND ..................................................................................2

    A. The Complaint's Allegations ..........................................................................2

    B. The Social Security Administration Changes its Assignment Methodology for Social Security Numbers issued after June 25, 2011 ...............................................................................................................3

    C. Plaintiffs' Alleged Rental Application ...........................................................4

    D. Plaintiffs' Unruh Act Claim ...........................................................................4

III. ARGUMENT ............................................................................................................5

    A. Plaintiffs Have Not Stated a Claim for Violation of the Unruh Act .........6

        1. TransUnion, TURSS and RentSpree Are Not *the* "Business Establishment" That Allegedly Deprived Them of Housing .........7

        2. According to Plaintiffs, Defendants' Policy is Facially Neutral ....................................................................................................9

        3. Plaintiffs Fail to Plead and Cannot Prove Intentional Discrimination ......................................................................................10

IV. CONCLUSION ......................................................................................................12

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS TRANS UNION, LLC'S, TRANSUNION RENTAL SCREENING SOLUTIONS, INC.'S AND RENTSPREE'S JOINT MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell Atlantic Corp. v. Twombly*,
   (2007) 550 U.S. 544 ................................................................................. 6

*Dworkin v. Hustler Magazine Inc.*,
   (9th Cir. 1989) 867 F.2d 1188 .................................................................. 5

*Fleming v. Pickard*,
   (9th Cir. 2009) 581 F.3d 922 .................................................................... 6

*Harris v. Cap. Growth Invs. XIV*,
   (1991) 52 Cal. 3d 1142, 805 P.2d 873 .................................................... 10

*Ashcroft v. Iqbal*, (2009) 556 U.S. 662 ........................................................ 6

*Jancik v. Redbox Automated Retail*,
   (C.D. Cal. May 14, 2014), No. SACV 13–1387–DOC, 2014 WL
   1920751 .................................................................................................. 8

*Kong v. Mana Investment Co., LLC*,
   (C.D. Cal. May 1, 2019) No. SA CV 18-01615, 2019 WL 3220027 ................ 12

*McGee v. Poverello House*,
   (E.D. Cal. Oct. 30, 2019) Civ A. No. 1:18-cv-00768, 2019 WL
   5596875 ............................................................................................. 6, 7

*Estate of Mejia v. Archambeault*,
   (S.D. Cal. Sept. 27, 2021) Case No.: 20-cv-2454, 2021 WL 4428990 ............... 7

*Pell v. Nunez*,
   (C.D. Cal. Aug. 23, 2022) No. CV 22-3732-MWF, 2022 WL
   16961478 .............................................................................................. 11

*Robles v. Domino's Pizza*,
   (9th Cir. 2019), 913 F.3d 898 .................................................................. 8

*Turner v. Ass'n of Am. Med. Colleges*,
   167 Cal. App. 4th 1401, 85 Cal. Rptr. 3d 94 (2008), *as modified on
   denial of reh'g* (Nov. 25, 2008) ............................................................... 9

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS TRANS UNION, LLC'S, TRANSUNION RENTAL SCREENING SOLUTIONS, INC.'S AND RENTSPREE'S JOINT MOTION FOR JUDGMENT ON THE PLEADINGS

*Weyer v. Twentieth Century Fox Film Corp.*,
    (9th Cir.2000) 198 F.3d 1104 ............................................................................... 8

*Wilkins-Jones*,
    (N.D. Cal. 2012) 859 F. Supp. 2d 1039 ................................................................. 7

**Statutes**

Cal. Civ. Code § 51 *et seq.* ................................................................................. 1, 6, 7, 9,

**Rules**

F.R.E. 902(5) .................................................................................................................. 3

Fed. R. Civ. P. 12(c) .................................................................................................. 5, 6

**Other Authorities**

https://www.ssa.gov/employer/randomization.html
    (last visited November 13, 2024) ........................................................................ 3

https://www.ssa.gov/employer/ssnvhighgroup.htm
    (last visited November 13, 2024) ........................................................................ 3

https://www.ssa.gov/employer/ssnweb.htm
    (last visited November 13, 2024) ........................................................................ 3

iii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS TRANS UNION, LLC'S, TRANSUNION RENTAL SCREENING SOLUTIONS, INC.'S AND RENTSPREE'S JOINT MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants Trans Union LLC ("TransUnion"), TransUnion Rental Screening Solutions, Inc. ("TURSS") and RentSpree, Inc. ("RentSpree"), by and through their undersigned counsel, hereby submit this Memorandum of Points and Authorities in Support of their Joint Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Motion").

## I. PRELIMINARY STATEMENT

In Count V of their First Amended Complaint (the "Complaint"), Plaintiffs Hala Ahmed and Maali Salim assert that TransUnion, TURSS and RentSpree are liable to them under California's Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.* (the "Unruh Act"), for alleged discrimination on the basis of "ancestry, national origin, genetic information, citizenship, primary language and/or immigration status." Plaintiffs' theory of liability is a creative attempt to contort the Unruh Act on the basis of Plaintiffs' immigrant status. Because this attempt is unavailing, this Court should grant the Motion.

More specifically, Plaintiffs aver that TransUnion and TURSS provided at least one credit report about them to an unidentified potential landlord which allegedly contained a "fraud alert" stating that "SSN may be invalid – it was either very recently or never issued by the Social Security Administration." ECF No. 28 ¶¶ 49, 54. Plaintiffs made similar allegations relating to RentSpree. ECF No. 28 ¶ 42. As Plaintiffs are aware, RentSpree does not prepare consumer reports and is not a consumer reporting agency or reseller as defined by the FCRA or the CCRAA. Plaintiffs further allege that this unidentified potential landlord denied their rental application and deprived them of housing. *Id.* ¶ 56. Plaintiffs do not contend that TransUnion, TURSS or RentSpree deprived them of housing for discriminatory reasons. Rather, Plaintiffs instead allege that TransUnion, TURSS and RentSpree intentionally discriminated against them by reporting the "fraud alert" to at least one potential landlord. *Id.* ¶ 95. The Complaint, however, repeatedly alleges that TransUnion has a policy where it employs the fraud alert that Plaintiffs challenge, not

to immigrants, but to any person who was issued a social security number at any point after 2011 by the Social Security Administration. *Id.* ¶¶ 87, 89.

Reading the Complaint as a whole reveals that Plaintiffs' true alleged injury is that they were denied housing as a result of their immigrant status. *See* ECF No. 28 ¶¶ 2, 85, 92, 93, 204, 205. TransUnion, TURSS and RentSpree did not make the decision to deny Plaintiffs housing. Nor could they. The unidentified potential landlord allegedly did. By Plaintiffs' own allegations, TransUnion's policy is neutral on its face, and the Amended Complaint pleads, at most, disparate impact as to immigrants, not intentional discrimination. It is well settled that disparate impact is insufficient to state a claim under the Unruh Act. Plaintiffs' Unruh Act claim is simply a bridge too far, and this Court should dismiss Count V of the Amended Complaint with prejudice.

## II.    FACTUAL BACKGROUND

### A.    The Complaint's Allegations[1]

Plaintiffs allege that TransUnion and TURSS are consumer reporting agencies in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties. ECF No. 28 ¶¶ 11, 12. Plaintiffs also allege that TURSS is a wholly owned subsidiary of TransUnion. *Id.* ¶ 23. Plaintiffs allege that RentSpree is a "reseller" under the FCRA. *Id.* ¶ 10.

Plaintiffs aver that, when a consumer submits a rental application through Defendant RentSpree, Inc. ("RentSpree"), RentSpree requests and obtains a consumer report from TURSS, which in turn requests and obtains a consumer credit report from TransUnion. *Id.* ¶ 25. Thus, according to the Complaint, information reported in the consumer report by RentSpree is acquired from TURSS, and the information reported in the consumer report by TURSS is acquired from TransUnion. *Id.* ¶¶ 26-27.

---

[1] TransUnion, TURSS and RentSpree accept the facts plead in the Complaint as true for purposes of this Motion only, and as set forth in their respective Answers deny the veracity of the allegations in the Complaint. See ECF Nos. 30, 31, 35.

Plaintiffs allege that TransUnion and TURSS have a policy or procedure whereby they "report all social security numbers issued after 2011 with a fraud indicator." *Id.* at ¶ 87. Plaintiffs further allege that TransUnion and TURSS "place a blanket fraud indicator on all social security numbers issued after 2011." *Id.* at ¶ 89. The Complaint avers that the "fraud alert" states, "SSN may be invalid—it was either very recently or never issued by the Social Security Administration" (hereinafter, the "fraud alert"). *Id.* at ¶ 54.

### B. The Social Security Administration Changes its Assignment Methodology for Social Security Numbers issued after June 25, 2011

On June 25, 2011, the Social Security Administration (the "SSA") implemented what it described as the "randomization" methodology and changed the way social security numbers were assigned. *See* https://www.ssa.gov/employer/randomization.html (last visited November 13, 2024), a true and correct copy of which is attached to the Request for Judicial Notice as Exhibit A.

Before June 2011, the SSA assigned social security numbers based on geographical significance. *See* https://www.ssa.gov/employer/ssnweb.htm (last visited November 13, 2024), a true and correct copy of which is attached to the Request for Judicial Notice as Exhibit B. Indeed, historically, the first three digits of a social security number denoted the geographic location where the application for an original social security number had been filed. *Id.* Moreover, the SSA published and maintained the "High Group List," which was a means of determining whether a social security number was valid. *See* https://www.ssa.gov/employer/ssnvhighgroup.htm (last visited November 13, 2024), a true and correct copy of which is attached to the Request for Judicial Notice as Exhibit C. Further, since 1972, the SSA had "issued Social Security cards centrally, and the area number reflected the state, as determined by the ZIP code in the mailing address of the application." Request for Judicial Notice, Ex. A.

The SSA's randomization project affected the social security number assignment

process in three ways. First, it eliminated the geographical significance of the first three digits of the social security number, referred to as the area number, by no longer allocating the area numbers for assignment to individuals in specific states. Second, it eliminated the significance of the highest group number, and as a result, the "High Group List" can only be used to validate social security numbers issued before June 2011. Third, the SSA introduced previously unassigned area numbers for assignment, with the exception of area numbers 000, 666 and 900-999. *Id.* When launching the randomization project, the SSA cautioned that "[t]hese changes to the SSN may require systems and/or business process updates to accommodate SSN randomization." *Id.*

Plaintiffs contend that the SSA issued them social security numbers in December 2011, after the randomization change took effect. *Id.* at ¶ 59.

### C.  Plaintiffs' Alleged Rental Application

Plaintiffs allege that on January 12, 2022, they submitted a rental application through RentSpree. ECF No. 28 ¶ 38. Plaintiffs also allege that, on that same date, TransUnion and TURSS prepared a consumer report about Plaintiffs. *Id.* at ¶¶ 48, 53. Plaintiffs further allege that the consumer reports prepared and published by TransUnion and TURSS contained the "fraud alert." *Id.* at ¶¶ 49, 54. According to Plaintiffs, at least one unidentified potential landlord considered the "fraud alert" and ultimately denied Plaintiffs' rental application. *Id.* at ¶ 56. Plaintiffs further allege that "the inaccurate reporting by the Defendants about the Plaintiffs was considered by at least one landlord who ultimately denied the Plaintiffs' application and leased the property to another group of renters who did not have a fraud indicator associated with their consumer reports." *Id.* Plaintiffs contend they have "suffered deprivation of housing." *Id.* at ¶¶ 85, 92, 204.

### D.  Plaintiffs' Unruh Act Claim

Plaintiffs assert a putative class claim for violation of the Unruh Act in Count V of their Complaint and seek certification of the following putative class:

> (1) All consumers (2) who were born outside the United

4

> States and its territories, (3) whose social security number was issued in the United States after 2011; and (3) [sic] whose consumer reports were published by RentSpree, TURSS or Trans Union (4) [sic] within two years prior to the date on which the Class Action Complaint was filed through the date of class certification; (5) [sic] and the consumer report included a fraud indicator that included the following or similar language "SSN may be invalid – it was either very recently or never issued by the Social Security Administration."

*Id.* ¶ 97. The allegations supporting Plaintiffs' Unruh Act claim are scant at best and are largely grounded in speculation. For example, Plaintiffs allege that "Defendants intentionally choose [sic] to label consumers with social security numbers issued after 2011 as fraudulent or fake based on invalid and discriminatory reasons, subjecting such consumers to injuries including communication of false fraud indicators that result in additional injuries such as deprivation of housing," and that "[c]onsumers with social security numbers issued after 2011 who are applying for housing are likely to be immigrants to the United States." *Id.* ¶¶ 92-93; *see id.* ¶¶ 204-208. Plaintiffs further allege that the "fraud alert" was "considered by at least one landlord who ultimately denied the Plaintiffs' application and leased the property to another group of renters who did not have a fraud indicator associated with their consumer reports." *Id.* at ¶ 56. Notably, Plaintiffs do *not* allege that any rental application was denied because of the "fraud alert." As explained below, these allegations are insufficient to state a claim for relief under the Unruh Act.

### III.  ARGUMENT

After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). Because a motion for judgment on the pleadings is "functionally identical" to a motion to dismiss for failure to state a claim, the same standard of review applies to both motions. *See Dworkin v. Hustler Magazine Inc.*, (9th Cir. 1989) 867 F.2d 1188, 1192.

Judgment on the pleadings is properly granted where, as here, "there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of

law." *Fleming v. Pickard*, (9th Cir. 2009) 581 F.3d 922, 925 (citation omitted). This Court must accept the complaint's factual allegations as true and construe those facts in the light most favorable to the non-movant, but the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, (2007) 550 U.S. 544, 555.

To survive a motion for judgment on the pleadings, a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *See Ashcroft v. Iqbal*, (2009) 556 U.S. 662, 663. The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 679. When deciding a Rule 12(c) motion, courts may consider facts set forth in the pleadings as well as facts that are contained in materials of which the court may take judicial notice. *McGee v. Poverello House*, (E.D. Cal. Oct. 30, 2019) Civ A. No. 1:18-cv-00768, 2019 WL 5596875, at * 2. As explained below, Count V of the Complaint cannot clear this low bar.

### A.   **Plaintiffs Have Not Stated a Claim for Violation of the Unruh Act**

The Unruh Act provides that "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

A plaintiff alleging a violation of the Unruh Act must show that (1) plaintiff was denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) plaintiff's disability was a motivating factor for this denial; (3) defendants denied plaintiff the full and equal accommodations, advantages, facilities, privileges or services; and (4) defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss or harm. *Estate of Mejia v. Archambeault*, (S.D. Cal.

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS TRANS UNION, LLC'S, TRANSUNION RENTAL SCREENING SOLUTIONS, INC.'S AND RENTSPREE'S JOINT MOTION FOR JUDGMENT ON THE PLEADINGS

1  Sept. 27, 2021) Case No.: 20-cv-2454, 2021 WL 4428990, at * 8 (citing *Wilkins-Jones*, (N.D. Cal. 2012) 859 F. Supp. 2d 1039, 1048).  However, the Unruh Act "shall not be construed to confer any right or privilege on a person that is conditioned or limited by law or that is applicable alike to the persons of every sex, color, race, religion, ancestry, national origin, disability, medical condition, marital status, sexual orientation, citizenship, primary language, or immigration status, or to persons regardless of their genetic information."  Cal. Civ. Code § 51(c).

Plaintiffs here have not and cannot plausibly allege a claim for violation of the Unruh Act by TransUnion, TURSS or RentSpree because (1) TransUnion, TURSS and RentSpree are not the "business establishments" that allegedly caused Plaintiffs harm; (2) Plaintiffs themselves allege that TransUnion's and TURSS' alleged discriminatory policy is neutral on its face; and (3) Plaintiffs do not plead and cannot prove intentional discrimination and, at most, plead disparate impact, which is insufficient as a matter of law.  Accordingly, this Court should dismiss Count V of the Complaint with prejudice.

### 1. TransUnion, TURSS and RentSpree Are Not *the* "Business Establishment" That Allegedly Deprived Plaintiffs of Housing

Plaintiffs' theory of liability is grounded in their misplaced belief that TransUnion, TURSS and RentSpree can be held liable under the Unruh Act for a third party's alleged discrimination.  The Unruh Act "is concerned with equal access to places of public accommodations," and "not all groups are considered business establishments."  *McGee v. Poverello House*, 2019 WL 5596875, at * 5.  While the Unruh Act was intended to apply broadly, "the expansive scope of 'business establishment' is not without limits."  *Id.* at *11.  Whether TransUnion, TURSS or RentSpree are "business establishment[s]" under the Unruh Act is a question of law.  *McGee*, 2019 WL 5596875, at * 4.

TransUnion and TURSS' research has not yielded a published decision that has interpreted "business establishments" to include consumer reporting agencies. RentSpree is an online platform that connects landlords and property management

7

companies with prospective tenants and is not subject to the Unruh Act.  *See Jancik v. Redbox Automated Retail*, LLC, (C.D. Cal. May 14, 2014) No. SACV 13–1387–DOC (RNBx), 2014 WL 1920751, *9 (relying on *Weyer v. Twentieth Century Fox Film Corp.*, (9th Cir.2000) 198 F.3d 1104, 1114), granting Redbox Digital's Motion to Dismiss Unruh claim and rejecting application to internet websites where there is no nexus to a physical place of public accommodation; *see also Robles v. Domino's Pizza*, (9th Cir. 2019), 913 F.3d 898.

But even if TransUnion, TURSS and RentSpree could be considered "business establishments," under the Unruh Act, they are not *the* "business establishments" that purportedly caused Plaintiffs their alleged harm—the deprivation of housing.

Simply put, Plaintiffs are attempting to fit a square peg into a round hole. Plaintiffs are *not* alleging that TransUnion, TURSS or RentSpree (1) did not provide them with their credit reports; (2) withheld a piece of information in their credit reports that would ordinarily be provided; or (3) denied them some other access to any of its goods or services normally provided to other consumers.  *See generally* ECF No. 28. Plaintiffs instead contend that they submitted a rental application to a property owner who allegedly saw the "fraud alert" on their credit report and "ultimately" denied their rental applications, thereby allegedly depriving them of housing.  *See id.*  ¶ 56 ("The inaccurate reporting by the Defendants about the Plaintiffs was considered by at least one landlord who ultimately denied the Plaintiffs' application and leased the property to another group of renters who did not have a fraud indicator associated with their consumer reports.")  TransUnion, TURSS and RentSpree are *not* the public accommodation at issue that is allegedly not "free and equal;" that would be the owner of the unidentified prospective rental property.

Thus, even if TransUnion, TURSS or RentSpree could conceivably be considered a "business establishment" in its capacity of determining whether to issue a fraud alert in relation to a social security number—a proposition that is not grounded in existing case law—it is not *the* "business establishment" that Plaintiffs contend

8

deprived them of housing.  Rather, that "business establishment" is the unidentified potential landlord that allegedly denied Plaintiffs' rental application after seeing the "fraud alert."

Plaintiffs do not allege that TransUnion, TURSS or RentSpree could or did play a role in the potential landlord's decision-making, nor can they.  In fact, TransUnion, TURSS and RentSpree did not decide whether to grant or deny Plaintiffs' rental application.  That was a decision left to and made solely by the potential landlord.  The Complaint makes abundantly clear that Plaintiffs are improperly attempting to hold TransUnion, TURSS and RentSpree responsible for the conduct of third parties.  TransUnion and TURSS are not the "business establishments" which allegedly caused Plaintiffs harm, and the Unruh Act does not contemplate this type of third-party liability.  This Court should dismiss Count V of the Complaint with prejudice.

### 2. According to Plaintiffs, Defendants' Policy is Facially Neutral

Putting aside Plaintiffs' unavailing attempts to hold TransUnion, TURSS and RentSpree liable for the action of an unidentified third party, Plaintiffs' Unruh Act claim is meritless because the alleged policy at issue is facially neutral.  The Unruh Act states that it does not "confer any right or privilege on a person that is … applicable alike to the persons of every sex, color, race, religion, ancestry, national origin, disability, medical condition, marital status, sexual orientation, citizenship, primary language, or immigration status, or to persons regardless of their genetic information."  Cal. Civ. Code § 51(c).  Thus, the Unruh Act does not "extend to practices and policies that apply equally to all persons."  *Turner v. Ass'n of Am. Med. Colleges*, (2008) 167 Cal. App. 4th 1401, 1408, 85 Cal. Rptr. 3d 94, 100, *as modified on denial of reh'g* (Nov. 25, 2008).  "A policy that is neutral on its face is not actionable under the Unruh Act, even when it has a disproportionate impact on a protected class."  *Id.*

Plaintiffs allege that TransUnion and TURSS have a policy of "report[ing] all social security numbers issued after 2011 with a fraud indicator" and "place[ing] a blanket fraud indicator on all social security numbers issued after 2011."  ECF No. 28

¶¶ 87, 89.  Accepting Plaintiffs' allegations as true, TransUnion's and TURSS' purported policy is facially neutral as to the characteristics enumerated in the Unruh Act.  The decision to place a "fraud alert" on a consumer's credit report is not determined by a consumer's ancestry, national origin, genetic information, citizenship, primary language, and/or immigration status, as Plaintiffs assert.  *See id.* ¶ 95.  It is also not determined by any other enumerated characteristic set forth in the Unruh Act, such as race, religion, or sex.  Rather, it is determined solely by the nine digits of a social security number, without regard to any characteristics at all.  TransUnion's and TURSS' alleged policy does not come within the ambit of the Unruh Act because the policy is applicable to all persons.  This Court should therefore dismiss Count V of the Complaint.

### 3. Plaintiffs Fail to Plead and Cannot Prove Intentional Discrimination

Defendants' neutral policy also nullifies any argument that they intentionally discriminated against Plaintiffs on the basis of their ancestry, national origin, citizenship, primary language or immigration status.  The California Supreme Court has held that "a plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act."  *Harris v. Cap. Growth Invs. XIV*, (1991) 52 Cal. 3d 1142, 1175, 805 P.2d 873, 893.  Here, Plaintiffs do not plead, and from their allegations, it is clear that they cannot prove, that TransUnion, TURSS or RentSpree intentionally discriminated against them.

As discussed *supra* at 11-12, TransUnion's and TURSS' alleged policy is neutral on its face.  It applies to any consumer that had his or her social security number issued by the SSA after its randomization project.  *See* ECF No. 28 ¶¶ 81, 87, 89.  Plaintiffs' social security numbers were allegedly issued in December 2011, or after the randomization project.  *Id.* ¶ 59.  They therefore were allegedly subject to TransUnion's and TURSS' "blanket policy."  *Id.* ¶¶ 80-83.

For illustrative purposes, the following consumers would also be subject to TransUnion's and TURSS' "blanket policy": a Caucasian man born in Wisconsin in January 2012; an African American woman who had a new social security number issued in September 2012; a homosexual victim of identity theft who had his social security number issued in January 2013; and any person, of any creed, race, religion, ancestry, or any other enumerated characteristic under the Unruh Act after the SSA's randomization project went live. *See id.* ¶ 87. The list goes on and on.

Because this "blanket policy" applies to all persons with social security numbers issued after a certain date, there is no conceivable way that TransUnion, TURSS or RentSpree intentionally discriminated against Plaintiffs based on their ancestry, national origin, citizenship, primary language, or immigration status when it applied its alleged policy. Plaintiffs' immigrant status cannot convert a neutral policy into an intentionally discriminatory one.

Presumably recognizing this shortcoming, Plaintiffs cobble together a series of conclusory allegations such as: "Defendants intentionally chose to label consumers with social security numbers issued after 2011 as fraudulent or fake based on invalid and discriminatory reasons" and "Defendants intentionally labeled consumers with social security numbers issued after 2011 as fraudulent or fake, resulting in discrimination…" ECF No. 28 ¶¶ 92, 95, 204, 207. Inserting the word "intentionally" into the Complaint does not intentional discrimination make. Neither does labeling a reason as "discriminatory" make it discriminatory.

Plaintiffs' conclusory allegations are not entitled to consideration by this Court. *Pell v. Nunez*, (C.D. Cal. Aug. 23, 2022) No. CV 22-3732-MWF (RAOX), 2022 WL 16961478, at *7 (granting motion to dismiss age discrimination complaint because the allegations "are conclusory at best, besides as to Plaintiff's age, and provided no factual basis to support that Defendant's age was a basis for Defendant's denial of Plaintiff's requested relief, let alone that Defendant *intentionally* discriminated against Plaintiff on account of his age."). A clear review of the *factual allegations* in the Complaint

11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS TRANS UNION, LLC'S, TRANSUNION RENTAL SCREENING SOLUTIONS, INC.'S AND RENTSPREE'S JOINT MOTION FOR JUDGMENT ON THE PLEADINGS

reveals that Plaintiffs did not plead that TransUnion's and TURSS' alleged policy is intentional discrimination.

Even if this Court considered Plaintiffs' conclusory allegations, they demonstrate that Plaintiffs are seeking to hold TransUnion, TURSS and RentSpree liable not for intentional discrimination but for alleged disparate impact of a neutral policy. Plaintiffs allege that consumers "with social security numbers issued after 2011 that are applying for housing are *likely to be* immigrants to the United States." ECF No. 28 ¶ 92. (emphasis added). Plaintiffs similarly allege that consumers "with social security numbers issued after 2011, *and who are the age of majority*, are likely to be immigrants to the United States." *Id.* ¶ 93 (emphasis supplied).

In essence, Plaintiffs are arguing that TransUnion's and TURSS' alleged policy of applying the "fraud alert" for social security numbers issued after a certain date has a disparate impact on the immigrant population, such as Plaintiffs. The law is clear that claims of disparate impact are insufficient to state a claim under the Unruh Act. *Stern v. Bank of Am.*, N.A., (Cal. Ct. App. Nov. 7, 2014) No. B254751, 2014 WL 5803027, at *2 ("A commercial policy may have a disparate impact on one group without giving rise to a claim: the Unruh Act only covers '*intentional* acts of discrimination, not disparate impact'"); *Kong v. Mana Investment Co., LLC*, (C.D. Cal. May 1, 2019) No. SA CV 18-01615, 2019 WL 3220027, at *5 (a plaintiff must show "more than the disparate impact of a facially neutral policy"). This Court should dismiss Count V of the Complaint with prejudice.

## IV. CONCLUSION

For all of the foregoing reasons, TransUnion, TURSS and RentSpree respectfully request that this Court grant its Motion for Judgment on the Pleadings and dismiss Count V in the First Amended Complaint with prejudice.

| | |
|---|---|
| DATED:  November 27, 2024 | BUCHANAN INGERSOLL & ROONEY LLP |
| | |
| | /s/ Natalie N. Peled |
| | Natalie N. Peled |
| | *Attorneys for Defendants Trans Union, LLC and TransUnion Rental Screening Solutions, Inc.* |
| | |
| DATED:  November 27, 2024 | BUCHANAN INGERSOLL & ROONEY PC |
| | |
| | /s/ Samantha L. Southall |
| | Samantha L. Southall |
| | Patrick D. D. Doran |
| | Christian C. Kohlsaat |
| | *Attorneys for Defendants Trans Union, LLC and TransUnion Rental Screening Solutions, Inc.* |
| | |
| DATED:  November 27, 2024 | QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C. |
| | |
| | /s/ Camille R. Nicodemus |
| | Camille R. Nicodemus, Esq. |
| | *Attorneys for Defendant RentSpree, Inc.* |

**ATTESTATION PURSUANT TO L.R. 5-4.3.4(A)(2)(I)**

I, Natalie Peled, hereby attest that concurrence in the filing of this document and its contents was obtained from all signatories listed above and the attorneys listed above provided their express authorization to include their respective electronic signatures.

/s/ Natalie Peled

13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS TRANS UNION, LLC'S, TRANSUNION RENTAL SCREENING SOLUTIONS, INC.'S AND RENTSPREE'S JOINT MOTION FOR JUDGMENT ON THE PLEADINGS

# CERTIFICATE OF SERVICE

I, Natalie N. Peled, hereby certify that on November 27, 2024, I caused a true and correct copy of the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TRANS UNION, LLC'S, TRANSUNION RENTAL SCREENING SOLUTIONS, INC.'S AND RENTSPREE, INC.'S JOINT MOTION FOR JUDGMENT ON THE PLEADINGS** to be served upon all parties via the court's ECF notification system.

*Natalie N. Peled*
Natalie N. Peled